a and all right or honors is it pronounced robert or pronounced robert right we support my name is al robert i'm counsel for doctor barbara is a mania and who is the appellant in this matter we're here before this court seeking reversal of the trial court's decision to grant a rule twelve b six motion to dismiss which dismissed doctors amani and uh... procedural due process claims against uh... east jefferson general hospital district which is commonly referred to as the j uh... the the district court found that mister or that doctors amani was afforded adequate procedural due process but his decision failed to address the substance of the claims put forth in doctors amani's complaint in a minute complaint that although the uh... strictures across due process were afforded that uh... ultimate decision was arbitrary and capricious in that it failed to consider all the evidence and uh... that was before at the time of its rule uh... your honor's no undoubtedly that rule twelve b six motions are rarely granted their disfavored by the court uh... and that the every doubt is resolved in favor of the complainant uh... the factor looked in the light most favorable to the complainant at this stage of the proceedings uh... courts aware that the touchstone of procedural due process is the protection of the individual from uh... arbitrary action of the government uh... in this court the trial court this court affords the backstop and protection to ensure that government actors are actually enforcing and providing the due process that the constitution requires them to provide uh... i would suggest and i think i made the analogy in uh... the reply brief that this is essentially looking at a umpire in baseball who's calling balls and strikes or perhaps a gymnastics or an ice skating judge and they're making their rulings everyone is presumed that they're doing that based on an agreed upon strike zone or criteria that are are being judged if for some reason that umpire has his own strike zone that's never communicated to the to the players that's improper that's that's unfair and essentially that's what we're arguing happened here is that east jefferson had its processes but they failed to follow them they didn't look at the evidence and apply them to their procedures uh... there's two cases out of this court that i think that have been briefed the first is la haye i believe is how it's pronounced versus thompson services hospital and then davis versus west community hospital that provides that uh... hospital staffing decisions require follow require the following to provide minimal due process to to for staffing decisions the first is that the procedures of the hospital must be fair the next is that the standards by the hospital must be reasonable and the third which is what we've addressed here what we're complaining about here is that the hospital must not act in arbitrary or capricious uh... is on appeal here is the decision of each a to some merrily suspend doctors in maine and the bylaws which govern his relationship with the hospital are very clear what governs a summary suspension and i'll just read it directly it says that a summary suspension is only provided when immediate action is required to protect the life or well-being of a patient or to reduce a substantial and imminent likelihood of significant impairment of life health safety of a patient or person a summary suspension the chief of staff can say hey you're suspended leave the premises we'll deal with this later but somebody's gonna get hurt and that's what happened here on october six two thousand thirteen it was over five years ago this has dragged on but what happened is on that it was a saturday morning a patient doctor zemanian is a cardiologist he treats patients throughout the the metropolitan area there was a man that was uh... in the laplace area went to the hospital there they believed he was having a cardiac arrest called EJ and asked if and doctor zemanian if he could be transferred to the east jefferson general hospital doctor zemanian was not in the hospital that morning uh... he gave permission for the transfer the patient arrived at the hospital the attending physician in the ER called doctor zemanian and said if we're going to need to do an interventional procedure how would you like to handle this doctor zemanian said i have backup physician to assist me since i'm not there is doctor rolfsen and again we need to stick strictly to what is pled in your multi multi multi fact amended complaint but as i understood it doctor zemanian could not do whatever procedure was not permitted to do whatever procedure was being suggested at that hospital that he did not have privileges to do that he did not have well you've just told us something different well uh... i apologize there was asked if the procedure was required who was to who was to do it right doctor zemanian had admitting privileges so he could admit a client to the hospital if in fact the interventional procedure was required he had a physician lined up to to back him up and i apologize you're correct your honor i did misstate that well when you say back him up you're suggesting doctor the plaintiff could have done the procedure but i just want you to stick to the complaint you're right he could not there's no dispute he was not allowed to do interventional procedures at that time and he had to have someone there to do them and that's who doctor rolfsen was per the conversation with the attending in the ER doctor rolfsen was called and doctor rolfsen asked the ER physician to have doctor zemanian call him and for whatever reason that was never communicated to doctor zemanian and so what happens in those situations is the the own staff cardiologist the one who's there in the ER would see the patient and provide any interventional procedures that are necessary for reasons related outside of this issue that own staff cardiologist refused to see this patient because his practice had a policy that they would not see doctor zemanian's patients none of this was ever communicated to doctor zemanian uh... at some point he finally did learn that his doctor that doctor rolfsen had not shown up and doctor zemanian headed immediately to the hospital uh... and just so it's clear i don't know that it's the patient never needed the interventional procedure and and survived and there was no issues with the treatment that was provided that day uh... so whenever doctor zemanian found out that his patient had not been seen by the own staff cardiologist which is against procedures he was understandably upset and he reached out to the chief of staff to ask why is my patient not being seen by the own staff cardiologist this was a saturday morning the chief of staff was out of the hospital as well uh... and i think there was some misunderstandings quite frankly he interpreted doctor zemanian's complaint to be that he was that doctor zemanian was asking the chief of staff to order that own staff cardiologist to treat his patient but that's not what doctor zemanian was asking he was already in the hospital at that time in seeing his patient and and so uh... what happened was the chief of staff did in fact order the own staff cardiologist to treat this individual who had been moved to the critical care unit at this point there began to be further confusion because doctor zemanian was there treating his patient and he was giving orders to the staff and then the own staff cardiologist was also treating the patient as he had been ordered to do by the chief of staff without any knowledge from doctor zemanian because he had never requested that so the the the staff in the hospital the nursing staff reaches out to the chief of staff saying hey we're getting conflicting information how what am i supposed to do this what are we supposed to do the chief of staff who had interpreted doctor zemanian's complaints about the cardiologist gets frustrated with doctor zemanian what is he doing he was asking me to order the cardiologist to to do this treatment and now he's here so he tells this nurse that he's going to summarily suspend doctor zemanian and for them not to take his orders but the chief of staff never communicates this to doctor zemanian so over the course of that day the chief of staff does come into the hospital there's uh... he orders that doctor zemanian is suspended but he does he sends a sheriff's deputy to go pull doctor zemanian away physically pull him away from meeting with the client's family or the patient's family and they go into the conference room where he informs them that he's summarily suspended and tells them that if he comes back on the premises he's going to be arrested so doctor zemanian leaves there's no real discussion about trying to clear up that confusion that day uh... and and there's no dispute that what happens after that summary suspension that it goes before the medical executive committee they affirm the summary suspension then it goes before the medical appropriateness standard of care committee they also approved the summary suspension it goes in front of the peer review or fair panel process three full hearings or it was evenings with with other physicians the fair review or the fair panel process upheld the summary suspension and then doctor zemanian also filed uh... an appeal with the board of directors which also affirmed the summary suspension at the end of the day we have a decision from the fair panel hearing that's upholding the summary suspension but the problem begins is that the uh... the panel states in its written opinion that this matter can be distilled to the following three issues one, whether doctor zemanian's response was appropriate at the time of patient arrival two, whether doctor zemanian was disruptive in the emergency room and three, whether doctor zemanian was disruptive in the critical care unit i think given that this is a 12b6 motion to dismiss that all allegations pled must be considered in the light most favorable to the complainant and resolved in his favor i think it's plain and this is what is outlined in our amending complaint uh... beginning in the record i believe it's uh... sixty five but these allegations are specified in uh... seventy two of the record uh... this is plainly contradicts the the standard for summary suspension that's included in the bylaws in the course of the discovery that was conducted in in advance of the uh... the peer review hearings the it was admitted by members of the medical uh... the nbc the first review they didn't review any medical records they didn't have doctor zemanian's side of things they that they didn't even look at what the standard as to what they were looking at the plot the same the same cursory review with the MASOC and the same with the fair panel so what we're complaining about here is that the decision to uphold the summary suspension in order to be to afford due process and not be arbitrary or capricious it has to be supported by the evidence that was presented to the panel and we outline a multitude of issues supports plainly that the decision was arbitrary and capricious and not supported by the evidence that was produced not only by doctor zemanian but by the hospital itself uh... there's there's they say that one of the reasons that doctor zemanian for upholding the summary suspension was that the chief of staff informed doctor zemanian of the transfer of care to the on-call cardiologist when that first phone call was made that was never done the chief of staff himself admitted that at the fair review hearing that that was never done uh... that the the they uphold the decision that the chief of staff was correct to summarily suspend doctor zemanian because he was being disruptive in the ER and the uh... CCH but the chief of staff's testimony at the fair panel hearing was that he was unaware of any disruptive behavior so how can you uphold it they suggest that doctor uh... z wanted an emergency angiogram for this patient and that that was improper but that was the record shows that doctor z did not think he needed an emergency angiogram they they suggest that doctor z abandoned his patient when he arrived at the hospital the the the facts is certainly as alleged in the complaint make clear that he spoke to the treating physician in the ER and had a plan of care for the patient to be attended to as soon as he heard that that discussion did not was not followed through he was immediately at the hospital the evidence does not support the decision that he abandoned his patient the uh... fair panel review completely disregarded the entirety of doctor zemanian's testimony they say they disregarded for no reason he had he wrote two letters to the panel and to the chief of staff his testimony was corroborated what those previous letters had and the same thing with the patient's son the one person who would have been uh... impartial observer to the dispute going on in the hospital and they discount his testimony because it was emotional and it happened uh... i think eighteen months before but he himself had given an affidavit and there's nothing to suggest that his testimony was unreliable in short the hospital failed to apply the correct standard it did not afford procedural due process process to doctor zemanian and for that reason we say that the trial court was in error when it granted the rule twelve b six motion we asked this court to vacate thank you mister robert you've saved time for rebuttal yes your honor good morning your honors pj stakelum on behalf of east jefferson general hospital uh... at page one of his reply brief doctor zemanian states quote there is no dispute that east jefferson general hospital parentheses e.j. in quotes afforded doctor zemanian the appearance of due process end quote this is a clear admission that the procedures that were spelled out in the hospital's bylaws satisfied the constitutional requirements for due process that's not what he said he said the appearance of due process he didn't say that they provided process that might have appeared to be appropriate but really wasn't that's what that sentence says yeah what they can say what they can say you shouldn't i'm not going to waste time on that judge that's right what they're really arguing about is arbitrary excuse me you've already wasted a minute on it it's a ridiculous point move to something that's substantive what he's talking about is arbitrary and capricious there's two hurdles he's got to overcome when he goes down that path the first hurdle he's got to overcome is he's got to overcome the presumption that the decision makers acted honestly and with integrity he doesn't do that in this case the best he can do is an allegation in the complaint that the uh... decision makers were employed at EJ but in the Cain v. Hardy case which was a I believe a nineteen ninety one decision en banc by this court in which all but two judges of this court agreed with the majority opinion the court basically uh... said that it doesn't work like that the uh... the court said in the Cain case the state has no constitutional duty to provide a procedural regimen that guarantees faultless decision-making the state's interest in safety and efficiency find expression in that tolerable level of risk just as Dr. Cain contended that he was a victim of partisan decision-making because his business competitors were part of this decision-making process that's all Dr. Zemanian is contending here that doctors employed by the hospital were deciding the case against him what do you do with the uh... argument that on a rule twelve B six dismissal that all of the facts are to be construed in the light of a favorable uh... to Dr. Zemanian i think under twelve B six you're right all of the facts do have to be considered obviously under under uh... Ashcroft V. Iqbal and uh... Twombly you you get rid of the conclusory allegations the uh... legal inferences and stuff like that but when they say all of the facts have factual allegations have to be considered it means just that all of the factual allegations have to be considered and while the complaint does have to be construed liberally in favor of the plaintiff the court's required to consider all factual allegations including those that cut against the plaintiff there was a case that cited in the brief and I'm uh... the name escapes me at the moment but what happened was the plaintiff pled facts he lost on twelve B six because the facts he pled pled him into a statute of limitations issue court said he pled those facts the statute of limitations defense was apparent on the face of the complaint he loses in this case one of the big problems that Dr. Zemanian has is that he pled facts that basically provide a basis for the decision against him the uh... you know when you get into the terms arbitrary and capricious uh... there's a lot of cases that define him uh... reed versus state farm was a louisiana supreme court case which said an arbitrary act is an act based on random choice or personal whim rather than any reason or system and that court was quoting the new oxford dictionary uh... that court said capricious action is given to sudden and unaccountable changes of behavior the court also quoted black's law dictionary where it said a judicial decision founded on prejudice or preference rather than on reason or fact is often turned arbitrary and capricious in this case in this court uh... there was a case last year uh... baylor county hospital district versus uh... price uh... was decided in two thousand seventeen it was in the context of an agency uh... rulemaking uh... this decision uh... what happened there was a texas hospital was challenging a rule uh... that was promulgated in a uh... a medicare manual uh... and the question was whether or not this hospital qualified as a critical care hospital for special medicare reimbursement under the rural reimbursement program the the issue was was the CMS's definition of primary and secondary roads reasonable or not and uh... what the court you know the plaintiff objected the hospital was objecting to it saying it was you know arbitrary and capricious and all that stuff but this court basically said this court said quote so long as the agency's reasons and policy choices conform to minimal standards of rationality then its actions are reasonable and must be upheld and so in addition to dealing with the honesty and integrity presumption the plaintiff has the burden to show that the decision that he's questioning before this court does not conform to minimal standards of rationality and when you get into his case he makes a number of admissions in his lawsuit that come back and haunt him uh... for example on uh... in paragraph twelve he alleges that uh... on february sixteen two thousand eleven however E.J. revoked Dr. Zemanian's privileges to perform cardiac interventional privileges shows he's had a prior issue dealing with loss of privileges paragraph fourteen Dr. Zemanian is a strong-willed and principled physician who has not hesitated to question administrative practices and procedures when warranted and again shows he's had prior conflicts paragraph fifteen and sixteen as a result he's had conflicts with hospital administrations throughout his career which has resulted in the wrongful loss of his privileges and at the time at sixteen at the time of the incident that eventually resulted in this litigation Dr. Zemanian was challenging the suspension of his interventional privileges again he's got a history paragraph seventeen he alleges the incident occurred on october the sixth the calendar will show that was a sunday morning and it extended into sunday afternoon uh... he admits in paragraph twenty seven that he was upset when he arrived at the hospital paragraph thirty one he admits that after reviewing paragraph thirty one states after reviewing the results of tests ordered by the emergency room doctor and ordering additional tests of his own Dr. Zemanian contacted the E.J.G.H.'s chief of staff and complained about the on-call cardiologist's refusal to see his patient this was Dr. Zemanian escalating this incident to the chief of staff on a sunday obviously the chief of staff was not at the office not at the hospital as he later alleges in the complaint uh... paragraph thirty two that communication resulted in a series of miscommunications and misunderstandings that directly resulted in Plenty's hospital privileges at E.J. being unjustifiably and summarily suspended this is an admission that the Plenty's actions in escalating the incident to the chief of staff led to the confusion that he later alleges occurred that afternoon paragraph thirty five due to the chief of staff's order both Dr. Zemanian and the on-call cardiologist were attempting to treat the patient at the same time and this is the crux of the problem we got two doctors trying to treat a patient who's critically ill he was admitted to the hospital having possibly suffered a heart attack paragraph thirty six disagreements about the immediate course of treatment ensued the gist of that is pretty plain paragraph thirty seven Dr. Zemanian was upset with the uh... about uh... was upset that the on-call doctor who had previously refused to see the patient just because he was Plenty's patient was now assuming care while Dr. Zemanian was still the attending physician for the plaintiff and in paragraph thirty eight Dr. Zemanian's frustration was exasperated by the fact that the chief of staff did not inform him until much later in the day that he had ordered the on-call cardiologist to take over care of the patient and that Dr. Zemanian was to step down again admissions that Dr. Zemanian was upset and frustrated paragraph forty one with both cardiologists the on-call cardiologist and Dr. Zemanian now believing that each was in charge of the patient's care confusion ensued in the ccu ccu is the cardiac care unit again you can't have confusion in an area that treats critically ill patients paragraph forty two both doctors gave orders to the ccu nurses at the same time you begin to see what the problem is paragraph forty three the situation led to the chief of staff who was home at the time being called to come to the hospital the tension levels getting high paragraph forty five the quote house representative unquote advised the ccu nurses that they were not to take any further orders from Dr. Zemanian per order of Mrs. Brown the COO, that's chief operating officer of the hospital again this shows the the degree to which the problem has escalated you know that the house representative is now having to deal with a lot of confusion and tension in the ccu paragraph forty six the nurses thereafter refused Dr. Zemanian's subsequent orders shows Dr. Zemanian is continuing to give orders in spite of the conflicting orders going out paragraph forty eight Dr. Zemanian sought out the chief of staff for an explanation again he's escalating it back up to the chief of staff paragraph forty nine thereafter there were several meetings between the chief of staff and Dr. Zemanian obviously one meeting wasn't good enough but one of the things that this court is allowed to do on the Trombley and Incline you're spending a lot of time on arguing the merits of the ultimate decision but you're not saying very much about the due process issue that is whether Dr. Zemanian was afforded the due process that the law requires I mean it's fine that you argue with his merits but tell us about what process was or was not provided as required by law well the process he received was once he was notified of his summary suspension the following day he was given a letter which laid out the grounds for his suspension that's in his in his complaint he doesn't specify what the letter said uh... he was invited to attend a meeting of the medical executive committee the MEC the following day the eighth of october he didn't show up for that he claims in his complaint that it was because he was afraid of a fear of arrest but there's no allegation in the complaint that he did anything to uh... allay that fear he didn't call the hospital and say well can I come can I really come in or am I going to be arrested if I come in or can we do this by phone none of that happened the MEC which he complains about heard from the on-call cardiologist and the chief of staff that's in his complaint so they heard from two eyewitnesses to the incident uh... he complains that they didn't look at the medical records but there's no requirement that they look at the medical records these people are trying to determine what happened and they heard from two eyewitnesses whose stories were consistent no need to look at medical records uh... two days after that the medical staff appropriateness of care committee met and uh... considered it again doctor zemanian was a no-show for that uh... they affirmed the suspension and then uh... doctor zemanian appealed it to the uh... fair hearing panel this is a panel of five physicians uh... he alleges they were all employees of EJ that was not true uh... there was a cardiologist brought in from another hospital so that we wouldn't have this conflict but today we're here on the allegation but again we've got to stay within you're right we're here on the complaint you know if you would just let us ask our question and you'd wait to answer this would proceed a little more smoothly but we've got to stick within the four corners of the amended complaint correct and I've looked at all of it where in the amended complaint does it say that a fifth member of the panel was brought in from outside it doesn't it does not and I will stay I will pass on that I mentioned we we have to assume that they were all EJ employees for purposes of today the uh... the panel met on three nights and heard testimony prior to the panel meeting uh... doctor zemanian was allowed to conduct discovery he complains that we didn't follow the bylaws which provide that the hearing will be held in forty five days uh... he admits that part of the delay was due to his desire to take depositions which he was permitted to do he also obtained documents from the hospital uh... he uh... uh... he also objected he claims that in his complaint he alleges there were problems in assembling the panel uh... what he doesn't tell you is that's when he was challenging a couple members on the panel and so they were replaced uh... the panel went ahead and heard the case he was allowed to submit briefs uh... before and after uh... he was represented by counsel had the opportunity to cross examine witnesses and put on his own witnesses and at the end of the day he's objecting to some of the conclusions that the panel reached uh... but i mean anytime you try a case you're going to get witnesses whose testimony conflicts uh... the courts uh... you know this is a hospital privileges case a credentialing case and the courts grant considerable deference to the hospital bodies that make the credentialing decisions because they have a unique expertise in this area and this case is is really classic for that because we had a seriously ill patient uh... we had uh... a very bad situation in the critical care unit uh... and we had you know we had witnesses who then testified to a panel of doctors about what happened and uh... you know what he's really coming in now and saying is I want to weigh the evidence I don't I disagree with the conclusions they reached but again we go back to uh... the uh... the cane case if there's any minimal standard of rationality to support the decision and in this case you know as judge zaney found he received adequate due process his only complaint on the due process is that the decision they reached was arbitrary and capricious and and he's he's he's definition of arbitrary and capricious is it disagree with the evidence he wants to cite you know what he doesn't what he he never gets over that last hurdle about proving that there was no minimal standard of rationality behind the decision uh... and clearly when you look at the at what he admits to in his complaint the situation he created at the hospital that afternoon the the conflict the conflicting orders the fact that he continued to give orders throughout the afternoon after he had several meetings with the chief of staff and you know when we get to the inferences what do you think what is a reasonable inference to draw from his several meetings with the chief of staff shouldn't he have asked uh... don't you think it was reasonable to infer that during at least one of these meetings with the chief of staff he asked why is the on-call cardiologist treating my patient is it reasonable that to infer that he asked why are they ignoring my orders yet after he has this discussion with the chief of staff he's in there continuing to give orders and your honor is the gist of the problem he admits in his complaint to enough facts that there's a more than adequate more than reasonable basis for the for the decision that the fair hearing panel reached he he does complain about not being able to go to the MEC I would suggest to the court that the decision by the MEC the medical executive committee and the decision by the MSAOC the medical staff appropriateness of care committee all became moot once he goes to that full hearing with the with the panel because it was a fresh start for him at that point he had depositions he had witnesses he had an attorney uh... he had briefs he had everything he needed so anything that happened earlier i think was mooted by the time we get to the uh... fair hearing panel uh... i think uh... this you know that's pretty much where my argument is judge thank you Mr. Stakelin Mr. Robert you've saved time for the rebuttal very briefly your honors I know this is the last day of a long week uh... you don't need that that doesn't need to concern you Mr. Robert we're here for you I appreciate that uh... I know neither side wanted argument and we think you need argument and certainly and I very much appreciate the chance to argue my case on behalf of Dr. Zemanian here today i think that the entirety of Mr. Stakelin's argument is premised on viewing the facts and the light most favorable to his client it's not the standard that's applicable here today we're not running away from facts that could be construed to be unfavorable to Dr. Zemanian they're in there because they provide context as to what happened the reason that there's due process outlined or these procedures are outlined in the EJ manual in the bylaws is because he's absolutely right this is a emergency room it's a critical care facility things happen quickly it's important that the chief of staff can take actions that he thinks are necessary to preserve life of patients and the safety of employees and anyone else there without question that he is entitled to do that but the whole reason that the rest of the process is in place is that in in those circumstances sometimes mistakes are made and that's the purpose of the fair panel review hearing we put forth all of the evidence in our complaint that plainly disputes the conclusions that were reached by the panel and their own opinion cites an inappropriate standard that's contained in the bylaws that governs how they are supposed to rule for the purposes of this no cause of action we've met our standard and I think your honor it's plain that the trial court just erred it missed the boat on this for whatever reason Dr. Zemanian has stated a cause of action for violation of his procedural due process rights we ask this court to vacate and remand and allow us to go forward on this claim all right thank you Mr. Rivera your case and all of today's cases are under submission and the court is in recess